FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 MAY 31 P 5:52
CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

HARTLEY SHAWCROSS ROBERTSON,

Plaintiff,

v.

BEACON SALES ACQUISITION
d/b/a THE ROOF CENTER[1]

Defendant.

Case No.: GJH-16-3241

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Hartley Shawcross Robertson brings this *pro se* action against his former employer, Defendant Beacon Sales Acquisition, Inc. d/b/a The Roof Center ("Defendant" or "the Company"). Plaintiff alleges that Defendant demoted him in October of 2011 based on his race in violation of 42 U.S.C. § 1981 and terminated him in September of 2012 in retaliation for engaging in activity protected under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A). Now pending before the Court is Defendant's Motion to Dismiss, ECF No. 12, and Motion to Strike Plaintiff's Supplemental Addendum, ECF No. 21. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motions are granted.

I. BACKGROUND

A. Factual Background[2]

Plaintiff worked as an Assistant Controller in Plaintiff's Gaithersburg, Maryland headquarters, starting sometime before November of 2010.[3] Plaintiff alleges that starting in

---

[1] The Clerk will be instructed to update the docket and list Defendant's name as "Beacon Sales Acquisition, Inc. d/b/a The Roof Center." *See* ECF No. 12.
[2] Unless otherwise noted, the facts are taken from the Complaint and assumed to be true.

1

November of 2010, he observed Matthew Frye, the Branch Manager of Defendant's White Plains location, engage in inappropriate financial activities and that he reported these activities to William Onofre, Plaintiff's first-line supervisor and the Controller; Mike Alley, the Regional Manager; and Frances Stevenson, a Staff Accountant. Specifically, Plaintiff alleges that Frye repeatedly received checks from contractors but failed to immediately deposit them or otherwise notify the Regional Manager as required by Company policy. *Id.* at 7.[4] Because Frye was improperly advancing inventory to contractors without payment, Plaintiff warned Defendant that Frye was possibly defrauding the Company. *Id.* at 10.

On October 1, 2011, Plaintiff was assigned to conduct an audit of the inventory for the White Plains branch. *Id.* at 9. Plaintiff indicates that he was unable to perform the audit that day because the branch was not ready. *Id.* at 10. When Plaintiff returned to conduct the audit the following day, Onofre instructed Plaintiff that he only had two and a half hours to complete the audit. *Id.* Although Plaintiff stated that two and a half hours was insufficient, Plaintiff proceeded as expeditiously as possible and ultimately reported to Onofre that he found a large number of discrepancies and had concerns with the branch's inventory and accounting practices. *Id.*

On October 11, 2011, Onofre issued Plaintiff a written reprimand for failing to follow the audit process because he allegedly utilized branch employees to assist with taking the inventory. *Id.* at 11. Onofre did not investigate the inventory discrepancies that Plaintiff previously raised. *Id.* On October 17, 2011, Plaintiff was summoned to the Human Resources office, and Onofre, along with two other employees, blamed Plaintiff for some of the missing inventory that Plaintiff

---

[3] Plaintiff's Complaint consists of a one-page "Statement of Claim" and attached correspondence from his former attorney to Defendant dated September 19, 2012 and November 13, 2012. ECF No. 1-2. The Court will rely on both Plaintiff's statement and the attached correspondence when considering his claims herein. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). However, while Plaintiff's November 13th correspondence provides background information regarding Plaintiff's employment, the letter leaves blank both Plaintiff's initial hire date and duties as an Assistant Controller. *See* ECF No. 1-2 at 7.
[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

previously identified. *Id.* Plaintiff states that he was given the choice to either accept a demotion to Staff Accountant or face termination. *Id.* Plaintiff alleges that his demotion was part of an effort by Defendant to cover up Frye's infractions and systematically reduce Plaintiff's role in the company. *Id.* Although the correspondence attached to Plaintiff's Complaint makes no mention of racial discrimination, Plaintiff alleges in his Statement of Claim that he, an African American, was demoted whereas Alley, who is Caucasian, failed to act in response to Frye's misconduct but was allowed to remain in management. *Id.* at 1.

Plaintiff contends that following his demotion, he continued to report instances of possible misconduct but, on August 12, 2012, he was issued a Final Warning for questioning management practices. *Id.* at 11. On September 19, 2012, Plaintiff's former attorney informed Defendant of its alleged retaliation against Plaintiff and requested that it stop. *Id.* at 12; *see also id.* at 2–3 (September 19, 2012 Correspondence). On September 20, 2012, Plaintiff reported that Onofre appeared to be inappropriately using Company funds, yet Defendant failed to investigate. *Id.* at 12. On September 24, 2012, Defendant relieved Plaintiff of all major duties. *Id.* The following day, Defendant terminated Plaintiff. *Id.*

**B. Service of Process**

Plaintiff filed his Complaint on September 23, 2016 but did not serve Defendant with a copy of the summons until October 23, 2017, almost 400 days later. ECF Nos. 1, 11. After Plaintiff initially filed the Complaint, the Court issued an Order on September 30, 2016 directing Plaintiff to complete and file a summons. ECF No. 2. In the Order, the Court informed Plaintiff of his obligation to serve Defendant with a summons and copy of the Complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure and provided Plaintiff with the website and phone number for the Maryland State Department of Assessments and Taxation so that Plaintiff

3

could obtain the name and service address for Defendant's resident agent. *Id.* Following this Order, Plaintiff failed to submit a completed summons for the Clerk to issue and failed to serve Defendant with the summons and copy of the Complaint.

On February 2, 2017, the Court ordered Plaintiff to show cause as to why service of process had not been effected within fourteen days and warned that failure to show cause would result in dismissal of the Complaint. ECF No. 3. On February 15, 2017, Plaintiff submitted a proposed summons for Defendant's General Counsel at 5244 River Road, Bethesda, MD 20816. ECF No. 4. The summons was issued by the Clerk's office on March 30, 2017, ECF No. 5, but Plaintiff did not explain his failure to timely submit a completed summons.

Following issuance of the summons, Plaintiff did not file a notification via affidavit that Defendant had been served, and, on June 8, 2017, the Court again ordered Plaintiff to show cause as to why service of process had not been effected. ECF No. 6. On June 21, 2017, Plaintiff requested an extension to the Show Cause Order, indicating that he was unaware that the Clerk's office had issued the summons. ECF No. 7. Plaintiff indicated that after receiving the Show Cause Order, he went to the courthouse to complete service of process and was referred to Janet Fletcher but was unable to contact her. *Id.* Plaintiff then mailed the summons to Defendant at the River Road address and filed a copy of the certified mail receipt on August 7, 2017. ECF No. 8. Again, Plaintiff failed to explain his delay in mailing the summons to Defendant.

On October 4, 2017, the Court informed Plaintiff that there was no indication that the summons was mailed to Defendant as it did not appear that the mail was sent restricted delivery with a return receipt requested. ECF No. 9. The Court once again ordered Plaintiff to show cause as to why service of process had not been effected. *Id.* Plaintiff responded on October 18, 2017, indicating that while he sent a copy of the summons by certified mail with return receipt

4

requested on June 22, 2017, the certified mail was unable to be delivered because the addressee was unknown, and it was returned to Plaintiff on August 4, 2017. ECF No. 10.[5] Plaintiff indicated that he had since discovered the correct address for Defendant's General Counsel and re-sent the summons via certified mail that day. *Id.* On October 25, 2017, Plaintiff filed a copy of the associated return receipt, indicating that the summons had been delivered to Defendant's General Counsel at its correct address. ECF No. 11.

## II. DISCUSSION

Defendant moves to dismiss the Complaint for insufficient service of process, Fed. R. Civ. P. 12(b)(4), (5), and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court will address both issues.

### A. Service of Process

Rule 4 of the Federal Rules of Civil Procedure provides explicit requirements for timely and effective service of process. Within 90 days of filing a complaint, the plaintiff is responsible for serving both the summons and a copy of the complaint to the defendant. Fed. R. Civ. P. 4(c); 4(m).[6] If the plaintiff has not served the defendant within 90 days, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice" unless the Plaintiff shows good cause for its failure to do so. *Id.* at 4(m). Plaintiff's 90-day period for service of process expired on December 22, 2016. Good cause requires a showing that the plaintiff made reasonable and diligent efforts to timely serve the defendant. *See Chen v. Mayor*

---

[5] While Plaintiff had previously filed a copy of this certified mail receipt on August 7, 2017, ECF No. 8, the filing did not include a copy the certified mail envelope indicating that the certified mail was unable to be delivered. *See* ECF No. 10-2.

[6] Defendant maintains Plaintiff only served the summons, without a copy of the Complaint. ECF No. 12-3 ¶ 4 (Declaration of Shauna Farrington, Human Resources Specialist and Executive Assistant in Defendant's Office of the General Counsel). In its opposition to Plaintiff's motion to dismiss, Plaintiff does not rebut Defendant's contention. However, because the Court will not excuse Plaintiff's untimely service, the Court need not address whether the service was also defective because it failed to include a copy of the Complaint.

*& City Council of Baltimore*, 292 F.R.D. 288, 293 (D. Md. 2013) *aff'd* 546 F. App'x 187 (4th Cir. 2013). A showing of good cause is often predicated on some outside factor interfering with, or preventing, an otherwise diligent plaintiff from timely providing service, such as a putative defendant's evasion of process, the plaintiff experiencing difficulty in obtaining the defendant's proper address, the plaintiff being misdirected by court personnel as to proper procedure, or that a defect in the attempted service was not revealed by the defendant until after the time to serve had expired. *Id.* (citations omitted). Notably, a *pro se* plaintiff's negligent or inadvertent mistake does not constitute good cause. *See id.* at 294 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Here, the Court repeatedly ordered Plaintiff to show cause for his failure to properly serve Defendant well after the 90-day deadline had expired, and Plaintiff has not affirmatively requested, nor has the Court expressly or implicitly granted, an extension of time for good cause. *See Mendez v. Elliot*, 45 F.3d 75, 79 (4th Cir. 1995) (finding that a district judge did not implicitly grant plaintiff an extension of time to serve defendants even though the judge continued to administer the case after the expiration of the Rule 4(m) deadline).[7] However, Plaintiff sets forth a number of reasons attempting to explain his failure to timely serve

---

[7] In *Mendez*, in determining that the District Court's efforts towards case administration had not implicitly granted an extension of time, the Fourth Circuit relied on an assumption that Rule 4(m) had the same meaning as its predecessor, former Rule 4(j), and held that the complaint *must* be dismissed absent a showing of good cause. *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995). As other courts in this district have noted, the promulgation of the 2015 Amendment to Rule 4(m) suggests that *Mendez* is no longer the controlling authority in the Fourth Circuit because, contrary to former Rule 4(j), Rule 4(m) no longer *requires* a court to dismiss a complaint absent a showing of good cause. Rather, a Court may, in its discretion, permit an extension of time regardless of good cause shown. *See LHF Productions, Inc. v. Does*, No. 3:16cv284, 2016 WL 7423094, at *6 n.11 (E.D. Va. Dec. 22, 2016); *id.* (citing *Robinson v. GDC, Inc.*, No. 1:16cv174, 2016 WL 3461285, at *3 (E.D. Va. June 21, 2016)). *But see Chen v. Mayor & City Council of Baltimore*, 292 F.R.D. 288, 293 (D. Md. 2013) *aff'd* 546 F. App'x 187 (4th Cir. 2013) ("despite the apparent avalanche of cases within this circuit that question the validity of *Mendez*, this Court's most recent decisions affirm the authority of *Mendez*"). In this case, the Court's numerous Show Cause Orders clearly did not extend the time for Plaintiff to complete service; rather, the Court sought an explanation for Plaintiff's failure to do so before considering whether to dismiss his Complaint. Additionally, whether dismissal is mandated or discretionary, the Court would arrive at the same ruling. Therefore, the Court does not need to reconcile the conflicting post-*Mendez* case law at this time.

Defendant in various documents, including his June 20, 2017 motion for an extension of time to show cause, ECF No. 7; his October 18, 2017 response to the Court's October 4, 2017 Show Cause Order, ECF No. 10; and his response to Defendant's Motion to Dismiss, ECF No. 18. Plaintiff asserts that he was unfamiliar with the details of service of process and how to use the Court's electronic filing system, *id.* ¶ 33; unaware of the Court's September 30, 2016 Show Cause Order, *id.*; that the clerk incorrectly advised him that "the judge must first approve the suit before [Defendant] can be served," *id.*; that in June of 2017, he went to the courthouse and was "directed to contact Mrs. Janet Fletcher on behalf of Defendant" and sent the summons and complaint to her via certified mail on June 21, 2017,[8] *id.* ¶ 34; and that he did not obtain Defendant's correct mailing address until October 18, 2017, *id.* ¶ 35. None of these reasons are sufficient to show good cause.

Even assuming that Plaintiff did not receive the Court's September 30, 2016 Show Cause Order and further assuming that he received erroneous instructions from the Clerk's office, the Court's February 2 and June 6, 2017 Orders make clear that the Court was waiting on Plaintiff to serve Defendant before his action could proceed. ECF Nos. 3, 6. Moreover, even if Plaintiff was in fact incorrectly advised that he could not serve Defendant until the Court "approve[d] the suit," Plaintiff allegedly received this advice in June of 2017, well after the Rule 4(m) 90-day window had passed. Furthermore, the Court will not excuse Plaintiff's failure to mail the summons and complaint to Defendant's correct address. First, the Court's September 30, 2016 Order, which was referenced in all of the Court's subsequent Orders, gave Plaintiff explicit

---

[8] Janet Fletcher is a Case Administrator in the Court's Clerk's Office. While Plaintiff may have been directed to speak with her regarding his questions on how to serve Defendant, the Court dismisses Plaintiff's assertion that he was told to send the summons and complaint directly to her because his June 21, 2017 certified mail return receipt, which he filed with the Court on August 7, 2017, is addressed to "Ross Cooper, Senior V.P. General Counsel" at Defendant's purported River Road address. *See* ECF No. 8.

7

instructions on how to obtain Defendant's address to complete service. ECF No. 2. Instead of following the Court's instructions, Plaintiff attempted to serve Defendant at an outdated address for one of its offices. Second, even if the Court credits Plaintiff's argument that Defendant moved from its River Road address subsequent to Plaintiff's termination, the summons was returned to Plaintiff as undelivered on August 4, 2017, yet he waited over two months to obtain Defendant's correct address and re-send the summons. *See* ECF No. 10. Plaintiff has nobody to blame but himself for his failure to timely serve Defendant. Plaintiff did not engage in a reasonable and diligent effort to serve Defendant, and his Complaint will be dismissed for his failure to properly serve Defendant.[9]

### B. Statute of Limitations

Even if Plaintiff had properly served Defendants, his claims would be dismissed pursuant to Rule 12(b)(6) because the Court can determine from the face of the Complaint that the claims are time-barred. When deciding a Rule 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may grant a Rule 12(b)(6) motion on statute of limitations grounds "only if the time bar is apparent on

---

[9] Plaintiff argues that because Defendant had actual notice of his claim, the Court should excuse Plaintiff's failure to comply with the requirements of Rule 4(m). ECF No. 18 ¶¶ 39, 40 (citing *Karisson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)). Plaintiff's argument is unavailing because while a Court may accept a defect in service of process, such allowable defects are attributed to the means and format of service, not a complete failure to provide a defendant with formal notice of the Complaint. *See id.* at 668 (denying motion to quash service because defendant had actual notice, even though service was improperly made on defendant's wife at defendant's former residence). The Court would render Rule 4(m) wholly impotent if it would allow eventual actual notice to excuse Plaintiff's failure to timely serve.

8

the face of the complaint." *See Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (citation omitted).

### 1. Racial Discrimination - § 1981

Section 1981 claims are subject to a four year statute of limitations. *See* 28 U.S.C. § 1658(a); *see also Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 383–84 (2004) (applying 28 U.S.C. § 1658 statute of limitations to § 1981 claim). Plaintiff filed his Complaint on September 23, 2016 and is therefore barred from bringing a claim under § 1981 for any discriminatory action occurring prior to September 23, 2012. Plaintiff's Complaint provides little support for his § 1981 claim—the only reference to racial discrimination is when Plaintiff "was reduced to staff" following Frye's purported misconduct while another Caucasian employee was not reprimanded. ECF No. 1-2 at 1. Although Plaintiff's "Statement of Claim" does not state when this discriminatory act occurred, the attached correspondence from Plaintiff's former attorney states that Plaintiff was demoted to Staff Accountant on October 17, 2011, meaning the statute of limitations period tolled almost a year prior to the filing of the Complaint. ECF No. 1-2 at 11. Plaintiff was terminated on September 25, 2012, within the statute of limitations period, but Plaintiff's Complaint does not allege that his termination was related to racial discrimination. Although Plaintiff states that "Defendant's instances of racial bias continued throughout my termination in September 2012" in his opposition to Defendant's Motion to Dismiss, ECF No. 18 ¶ 43, Plaintiff did not make any such factual allegations in his Complaint, and he may not modify his Complaint through an opposition to a motion to dismiss. *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d. 533, 541 (D. Md. 2016).

Contrary to Plaintiff's assertions, he may not justify his failure to bring suit within the statute of limitations by showing that his failure to do so was either reasonable or without

9

prejudice to Defendant.[10] Although equitable tolling may excuse a plaintiff's failure to bring his claim within the limitations period, Plaintiff has offered no justifiable explanation for his delay, and the Court will not excuse his failure to bring a timely claim simply because Defendant may not be prejudiced as a result. *See Chao v. Va. Dept. of Transp.* 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96 (1990) ("Equitable tolling has been allowed 'in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'")). As such, Plaintiff's § 1981 claim is dismissed with prejudice.

### 2. Retaliation – Dodd-Frank Act

The Dodd-Frank Act provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower . . . because of any lawful act done by the whistleblower." 15 U.S.C. § 78u-6(h)(1)(A). The statute of limitations for these securities whistleblower actions is as follows:

> (I) In general
> An action under this subsection may not be brought—
>
> > (aa) more than 6 years after the date on which the violation of subparagraph (A) occurred; or
> >
> > (bb) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A).
>
> (II) Required action within 10 years
> Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs.

---

[10] Plaintiff relies on *Giddens v. Ibrandsten Co.*, see ECF No. 18 ¶ 43, but *Giddens* considered the affirmative defense of laches and is inapplicable herein. 355 F.2d 125, 127 (4th Cir. 1966) ("Thus the presence of laches is ascertained by a balancing of the claimant's delay with the proferred excuse, if any, against the defendant's consequent detriment. The determination demands a weighing of equities.").

15 U.S.C. § 78u-6(h)(1)(B)(iii).

Plaintiff incorrectly assumes that, based on the provision above, his Complaint is not time barred because it was filed within six or ten years from the date of his termination. ECF No. 18 ¶¶ 43–45. Both items (aa) and (bb) in subclause (I) above set temporal limits on a plaintiff's ability to bring suit, but the former is a statute of repose, and the latter is a statute of limitations. *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2185 (2014) (citing § 78u-6(h)(1)(B)(iii)(aa)) ("Congress has used the term 'statute of limitations' when enacting statutes of repose."). A statute of repose puts an outer limit on the right to bring a civil action, whereas a statute of limitations creates a time for suing in a civil case based on the date when the claim accrued. *See CTS Corp.* at 2182–83 (citations omitted).

While Plaintiff brought his Complaint within six years of being terminated for undertaking an alleged protected activity, he became aware of facts material to his right of action no later than November 13, 2012, the date in which Plaintiff's former attorney presented Defendant with the factual and legal basis of his claims. ECF No. 1-2 at 4. The plain language of § 78u-6(h)(1)(B)(iii) makes clear that if *either* item (aa) or (bb) is satisfied, a plaintiff's claim is time-barred. *See Igwe v. City of Miami*, No. 1:15-cv-21603-LENARD, 2016 WL 7671370, at *4 (S.D. Fla. Sept. 29, 2016) (holding that item (bb) serves as a three-year statute of limitations). Therefore, because Plaintiff failed to file his Complaint within three years of the date in which his cause of action accrued, his claim is time-barred and must be dismissed with prejudice.[11]

---

[11] Because Plaintiff's whistleblower retaliation claim is time-barred, the Court need not address Defendant's argument that Plaintiff is not a "whistleblower" under the Dodd-Frank Act. ECF No. 12-1 at 14.

### C. Defendant's Motion to Strike Plaintiff's Addendum

On February 16, 2017, Plaintiff submitted an Addendum to its Response in Opposition to Defendant's Motion to Dismiss (the "Addendum"). ECF No. 20. Effectively, this is a surreply. Pursuant to Local Rule 105(2)(a), surreply memoranda are not permitted to be filed unless otherwise ordered by the Court. "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). Plaintiff's Addendum will be stricken for two reasons. First, Plaintiff did not seek leave of Court prior to filing the Addendum. Second, even if Plaintiff had sought leave, the Court would not grant it because Defendant did not raise any new arguments in its Reply brief, ECF No. 19, and Plaintiff's Addendum does nothing more than bolster his previous arguments. Accordingly, Defendant's Motion to Strike Plaintiff's Addendum is granted.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motions to Dismiss and Strike, ECF Nos. 12, 21, are granted. A separate Order follows.

Dated: May 31, 2018

_____
GEORGE J. HAZEL
United States District Judge